## EAST TEXAS MOTOR FREIGHT LINES
### v. LOFTIS et ux.
### No. 6424.

Court of Civil Appeals of Texas. Texarkana.
March 17, 1949.

Rehearing Denied March 30, 1949.

Strasburger, Price, Holland, Kelton, & Miller, W. M. Taylor, Jr. and Royal H. Brin, Jr., all of Dallas, for appellant.

James S. Grisham, of Dallas, and Miller & Jackson, of Tyler, for appellees.

HALL, Chief Justice.

Richard L. Loftis and wife, appellees herein, were injured while riding in an automobile driven by Melvin Britton which collided with one of appellant's freight trucks, with van-trailer attached, parked on West Erwin Street in the City of Tyler, Texas, a short time after midnight on February 10, 1946. Appellee Richard L. Loftis, for himself and wife, instituted this suit against appellant for damages to them occasioned by the collision. Based upon a jury verdict in their favor judgment was rendered for appellees.

Appellant's second point is:

"Section 24, Article 6, of the ordinance of the City of Tyler dated August 6, 1943, was improperly admitted into evidence and violation thereof did not constitute negligence per se because:

"(a) Said section is unreasonable, unauthorized and unconstitutional.

"(b) Said section did not have the purpose of preventing accidents such as that involved in the present case."

The facts are that appellee Richard L. Loftis and wife, Melvin Britton and Charlsie Ann Dunn on the evening of February 9, 1946, went in Britton's car to Mack's Town Tavern which is located a short distance West of Tyler on the Wills Point Highway. These parties danced at the Tavern until about midnight. They returned to Tyler shortly after midnight, traveling east on the Wills Point Highway. This highway on entering the City of Tyler becomes West Erwin Street. Appellant's truck with trailer attached headed east was parked on the south side of Erwin Street next to the curb near Gerard's Steak House. It was in this position when Britton drove his car into the back end of the trailer which resulted in the injury of Loftis and wife and the death of Charlsie Ann Dunn. Shortly before the collision it had been snowing, sleeting and raining, but at the time of the accident it was misting rain and the street was wet, according to Britton. Appellee's testimony shows further that Britton's car was being driven at twenty-five to thirty miles per hour and that the car was within a few feet of appellant's trailer before Britton and his guests observed it—so close that Britton, the driver, could not apply the brakes. The impact was so severe that the left wheels of the trailer were driven forward several inches and the right side of the automobile demolished. It is undisputed that Loftis and wife and Miss Dunn were invited guests of Britton. It is also undisputed that appellant's truck was parked on a street within the city limits of Tyler and that no freight or other material was being loaded into or being unloaded from it. Appellant's driver testified that he parked the truck for the purpose of going into Gerard's Steak House to get a cup of coffee. The jury found that the driver of the truck was negligent in leaving it "parked on the street at the time and place it was on the occasion in question" and that such negligence was a proximate cause of the collision and the consequent injuries to Loftis and wife. The jury also found Britton, the driver of the automobile, negligent in failing to keep a proper look out, which was either a "proximate cause or a proximate contributing cause of the collision." The jury absolved Loftis and wife of any negligence whatsoever.

The ordinance referred to in appellant's point two is:

"Traffic Ordinance.

"An ordinance regulating traffic upon the public streets of Tyler, Texas, and repealing all other ordinances and section of ordinances in conflict therewith.

"Article 6.

"Stopping, Standing or Parking.

"Section 24. Buses, taxicabs, hackneys, transfer trucks and other public service vehicles prohibited from parking in certain sections.

"It shall hereafter be unlawful for the operators of any bus, taxicab, hackney, transfer truck, or other public service vehicle to park on any public street, alley, or place in the City of Tyler; however, this provision shall not prevent any such vehicle from temporarily stopping in accordance with other parking regulations, for the purpose of and while actually engaged in, taking on or discharging passengers or loading or unloading materials."

Appellant contends that the above ordinance is unconstitutional and void for the reason that it is such a broad and all-inclusive prohibition against parking as to be unreasonable and discriminatory. Especially is this true, it contends, where the street is as wide as West Erwin—sixty feet from curb to curb at the place where the collision occurred.

As heretofore pointed out, there is no dispute in the record of the fact that appellant's truck with trailer attached was parked parallel to the street in the City of Tyler near Gerard's Steak House, nor is there any contention by appellant that the driver of its truck was loading or unloading freight. So the issue here is with respect to the reasonableness of the ordinance prohibiting the parking of motor vehicles upon the streets of the City of Tyler except for the purpose of taking on or discharging passengers or loading or unloading freight. Is the ordinance so unreasonable as to be discriminatory and void? We think not. The preamble or enacting clause of the ordinance in question clearly reveals its pur-

pose. It is denominated "traffic ordinance," and its purpose is to regulate the flow of traffic upon the public streets of Tyler. The power of enacting such ordinance by the city is derived from Art. 11, Sec. 5, of the Constitution of Texas, Vernon's Ann.St., commonly known as "the Home Rule Amendment" and from Revised Statutes, Art. 1175, putting said Constitutional Amendment into effect. It has been many times held by our courts, indeed, R.S., Art. 1175, Sec. 16, emphatically states that cities "have exclusive dominion, control and jurisdiction in, over and under the public streets." Perhaps the leading case dealing with the extent of control a city may exercise over its streets is Greene v. City of San Antonio, Tex.Civ.App., 178 S.W. 6, 7, w/r, wherein it is said:

"Having exclusive control over the streets, the Legislature, or those to whom it has delegated powers over streets, have the right and authority to impose reasonable terms and conditions upon the right to use them. Subject to rights of abutting owners, streets may be closed to all business traffic, the speed of vehicles regulated, obstructions may be prevented or removed, licenses to use the streets may be required, travelers may be required to obey the directions of the police, vehicles having heavy loads may not be permitted on certain streets, or be required to have wide tires, the weight of loads may be limited, and hacks may be compelled to remain at certain stands. These are only a part of the many regulations that have been held valid. * * *

"The more complex the affairs of men become, the more the natural rights of individuals must be infringed upon for the public good. There must inevitably be more regulation, more necessity for surrender of certain rights, in the crowded city than in the rural community, and to protect the rights of the public the Legislature is clothed with authority to enact and enforce such laws and regulations as may be necessary in each community. The validity of such regulations must be measured by the necessities of the occasion and the rights of the public. *The regulation must be reasonable, but its reasonableness will* be measured by public rights." (Italics ours.)

See also Parsons v. City of Galveston, 125 Tex. 568, 84 S.W.2d 996; West v. City of Waco, 116 Tex. 472, 294 S.W. 832. It was said in Fletcher v. Bordelon, Tex.Civ. App., 56 S.W.2d 313, 317, w/r:

"It is not only the right, but the imperative duty, of the city to make and enforce such regulations covering the use of its streets, improved at large cost for the benefit of the public, as will be for the convenience and protection of the public." Note the authorities collated in the cases cited last above.

■ There is no discrimination or class legislation involved in this ordinance. It applies with equal effectiveness to all "operators of any bus, taxicab, hackney, transfer truck, or other public service vehicle." Greene v. City of San Antonio, supra, and authorities there cited. Many more authorities could be cited which have followed the Greene case but we deem it unnecessary. We have concluded that the ordinance in question is neither unreasonable nor arbitrary and finds direct support in the Constitution and the provisions of the statute herein referred to. As stated above, it is clear that the ordinance was enacted to regulate traffic upon the streets of the City of Tyler, Texas, and nothing is more closely associated or connected with such regulation than the prevention of traffic accidents such as here involved. The action upon the part of appellant's driver in violating the plain provisions of the ordinance in question by leaving his truck with trailer attached parked upon a street within the City of Tyler on the occasion in question while he was not engaged in loading or unloading freight constituted negligence per se. Alpine Tel. Corp. v. McCall, 143 Tex. 335, 184 S.W.2d 830; Herrin v. Falcon, Tex.Civ.App., 198 S.W.2d 117, writ refused, no reversible error. The facts being conclusive with respect to appellant's negligence per se, it only remains to determine whether such negligence was a proximate cause of the injury.

■ As above stated, the fact is undisputed that on the occasion of appellee's injury, appellant's freight truck with trailer attached was parked on the same side of the street as Gerard's Steak House in the

136

City of Tyler, a place where people gathered to eat. The truck-driver's purpose in stopping his truck and trailer at or near the steak house was to get a cup of coffee. From appellee's evidence it appears that the night was cloudy and rainy; it had been snowing and sleeting shortly before the accident, was misting rain at the time of the accident and the street was wet. The visibility was so poor, Britton and appellee Loftis testified, that they did not see appellant's truck and trailer until they were within a few feet of it. In our opinion such circumstances support the jury's finding that appellant's negligence was a proximate cause of appellee's injury. Herrin v. Falcon, supra.

With respect to its contention that the ordinance under consideration is void and unconstitutional as being unreasonable and discriminatory, appellant relies upon the cases of the City of Arlington v. Lillard, 116 Tex. 446, 294 S.W. 829; City of Ft. Worth v. Lillard, 116 Tex. 509, 294 S.W. 831; Ex parte Battis, 40 Tex.Cr.R. 112, 48 S.W. 513, 43 L.R.A. 863, 76 Am.St.Rep. 708; Baker v. Hasler, 218 Mo.App. 1, 274 S.W. 1095; and City of Clayton v. Nemours, 237 Mo.App. 167, 164 S.W.2d 935. The first two cases cited, that is the two Lillard cases, are not in point. The factual situation in those cases is entirely different. The Battis case was decided some twelve or fourteen years before the Home Rule Amendment to the Constitution was adopted, and fifteen years before R.S. Art. 1175 was enacted, putting said constitutional amendment into effect, and clearly could not be controlling here. The two Missouri cases referred to are, we think, not applicable for the reason that in the Baker case it is plainly stated that the ordinance there under inquiry had no support in the statutes of Missouri under which the city operated. The last case cited above, the City of Clayton v. Nemours, supra, merely holds that the Baker case was correct in its holding under the facts developed in the Baker case.

We have not considered the effect of the second ordinance copied in the record prohibiting the parking of automobiles in the City of Tyler between 12 o'clock midnight and 5 o'clock, A.M., for the reason that our opinion is not based upon a violation of that ordinance, and a discussion of it is unnecessary. Neither do we base our holding herein on common-law negligence.

We have examined all other points advanced by appellant and in our opinion they are without merit, and are therefore overruled.

The judgment of the trial court is affirmed.